**PHILLIPS INVESTMENTS, Inc. v. TAX ASSESSOR, et al.**
No. 67-205.
Circuit Court, Duval County.
February 2, 1968.

Frank C. Decker, Jacksonville, for plaintiff.

Stallings & Marr, J. Henry Blount, Walter C. Shea, Rogers, Towers, Bailey, Jones & Gay, and W. Joe Sears, Jr., all of Jacksonville, for defendants.

WILLIAM L. DURDEN, Circuit Judge.

*Final judgment:* This case is before the court upon application of the parties for the entry of a final judgment. The court has

considered the factual and legal issues raised by the pleadings, the oral testimony, the documentary evidence and arguments by counsel.

### Payment under protest

The general rule at common law held that, in the absence of statute, one who voluntarily pays an illegal tax, without duress or compulsion, cannot maintain an action to recover it back, in whole or in part. 51 Am. Jur., *Taxation,* §1184; Annotations, 64 A.L.R.9, 84 A.L.R.294. An example of this rule is expressed in North Miami v. Seaway Corporation, 9 So.2d 705 (Fla. 1942).

It is generally recognized that the legislature may abolish the common law rule, and grant taxpayers the right to sue for a refund of taxes voluntarily paid, if it chooses to do so. The statement in 51 American Jurisprudence, page 1017, is prefaced by the phrase "in the absence of statute", and this phrase constantly appears in all statements of the common law rule.

Following the date of origin of the North Miami v. Seaway decision and opinion, the Florida legislature enacted and has subsequently re-enacted every two years thereafter, §193.40, Florida Statutes, 1965. That statute reads —

> The comptroller shall pass upon and order refunds where payment has been made voluntarily or involuntarily of taxes assessed on the county tax rolls by reason of either of the following circumstances: (1) Any over-payment; (2) Payment where no tax was due; and (3) Where a bona fide controversy exists between the tax collector and the taxpayer as to the liability of the taxpayer for the payment of the tax claimed to be due, the taxpayer may pay the amount claimed by the tax collector to be due, and if it is finally adjudged by a court of competent jurisdiction that the taxpayer was not liable for the payment of the tax or any part thereof.

§193.40 does not make payment under protest a condition precedent to bringing a refund suit, and there is no justification in reading such a condition into the statute. This was the conclusion reached in People's Savings Bank v. Kiernan, 170 Atlantic 77. Although the statute there allowed a refund suit for taxes voluntarily paid, the defendant insisted, nevertheless, that the refund suit could not be maintained because there was no showing that the tax was paid under protest. In rejecting this contention, the court said —

> The new statute does not require that the payment of taxes shall be made under protest. If such a requirement is to be made a part of the statute, it can be incorporated therein only by implication. The authority of the Legislature to provide that a voluntary payment of a tax shall not prevent a taxpayer from the right to recover for overtaxation or illegal taxation cannot be doubted.

It is a reasonable inference that, if a protest as well as a payment was intended to be a prerequisite to the new remedy, it would have been so declared in the statute. The question of the wisdom of the statute is one for the Legislature, not for the courts.

We are of the opinion that the petitioner is not required to show that the tax complained of was paid under protest . . .

As applied to litigation such as this suit, §193.40 specifically provides that —

(1) Where there is a bona fide controversy as to the amount of tax due;

(2) The taxpayer may pay the amount claimed by the tax collector to be due; and

(3) Bring suit to determine the amount of tax due; and

(4) If successful, he may obtain a refund for the overpayment; and

(5) This may be done whether the payment was made voluntarily or involuntarily.

For the above reasons, the failure of the plaintiff to prove payment under protest, duress or compulsion is not fatal to its cause of action. 31 Fla. Jur., *Taxation*, §657, *Payment under protest*.

## *Exhaustion of administrative remedies*

This suit was originally filed to contest the 1966 assessment on the subject property. The taxpayer had filed its protest before the Duval County board of equalization and was denied any relief. This suit was thereafter timely filed.

This suit was still in litigation when the taxpayer's 1967 assessment became final. The taxpayer did not protest this assessment to the board of equalization. It did, however, file an amendment to the complaint contesting the validity of such 1967 assessment. The tax assessor moved the court to dismiss this amendment on the ground that the taxpayer had failed to exhaust its administrative remedies. §193.12, Florida Statutes, provides —

Every person owning or having the control, management, custody, direction, supervision or agency of property of whatsoever character that is subject to taxation under the laws of this state, shall return under oath the same for taxation to the county assessor of taxes in the proper county, or to other proper officer, on or before April 1 of each and every year, giving the character and the value of the same, as required by law; upon failure to do so the assessment and valuation made by the assessing officer or officers shall be deemed and held to be binding upon such owner or other person or corporation interested in such property, unless complaint is made of such assessment and valuation on the day set for

hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the county assessor of taxes.

This law and earlier statutes have been construed many times by the appellate courts of Florida. These opinions have been fairly well summarized in 31 Fla. Jur., *Taxation,* §630, where it is stated —

> "The question frequently arises as to whether failure to invoke an available administrative remedy prevents relief. In general, complaint to the equalization board is contemplated, since the time within which resort must be made to the courts is measured from the final act of these administrative officers."

This court recognizes the validity and propriety of such rule. It finds, however, that the facts here justify and require an exception. The taxpayer, as did many others in this county, protested its 1966 assessment. It was still in litigation when the 1967 assessment became final. In all similar cases the parties have agreed that the court's determination would control the assessment for both years. In all such cases where protest was made the board deferred its action on the 1967 protests with the statement that the suit on the 1966 assessment would control and determine the point. Therefore, the protest would have been of no avail. The law does not require the doing of a useless act. The motion to dismiss the amendment shall stand denied as announced at the trial.

### Legal description of the property

Government Lots 12 and 13, except part in Ocean Terrace Section 9, T3S, R29E, Duval County, Florida.

### Physical description of the property

The property has a rather difficult access, a little over one-quarter mile west of the diagonal intersection of Coastal Highway and St. Augustine Blvd., in a rather remote area of the Jacksonville Beaches. It is located less than one-quarter mile north of the St. Johns County line. Access to the property is by woods trail running southwesterly from the intersection of St. Augustine Blvd. and Coastal Highway. The property has an elevation of approximately 10 feet as indicated by the Jacksonville Beach geological survey. Vegetation coverage is random pine and oak with fairly dense palmetto underbrush. There are some random houses in the general vicinity, particularly to the south of the subject property; however, there are no subdivisions of the planned stage within a mile and a quarter.

*Fair market value*

There are between 33 and 34 acres of land in this parcel. The 1966 and 1967 assessments were $33,500.

The plaintiff supported its position with the testimony of two independent appraisers. Paul R. Akin testified that in his judgment the property had a fair market value as of the date of the assessment of $300 an acre for a total of $10,000. Appraiser Richard D. Barker testified that in his opinion the property had a value of $350 an acre for a total of $11,550. Also in support of his estimate of value Mr. Barker brought out the fact that this property is assessed on the city of Jacksonville Beach 1966 tax roll at $500 per acre for a total of $16,650.

The tax assessor submitted two witnesses in support of his position. The first witness was Howard C. Kaufold, chief appraiser and assistant county tax assessor. Mr. Kaufold testified that the $1,000 per acre assessment placed on the property was basically because of one or more sales in the area which brought that amount. He testified however, that their further inquiry indicated that this assessment should be reduced to $500 per acre as this would be more reflective of its current fair market value and that the assessments should be reduced accordingly.

The assessor's independent appraiser was Frank K. Osborn. Mr. Osborn testified that the property had an estimated value of $500 per acre for a total valuation of $16,650.

The court has studied very carefully the testimony of Mr. Kaufold and the appraisals submitted by the three independent witnesses. The court finds that the primary reason for the difference between Mr. Osborn and Mr. Kaufold on the one hand and Mr. Akin and Mr. Barker on the other is that Mr. Osborn and Mr. Kaufold considered several sales in the area which they thought were comparables which Mr. Akin and Mr. Barker either did not have any information about or did not consider to be comparables.

Viewed as a whole the testimony of Mr. Osborn and Mr. Kaufold is more persuasive and compelling because it appeared obvious to the court that the comparables which were considered by them were in fact the best evidence that was available as to the value of the land under consideration. The court therefore finds that the property had a fair market value of $500 per acre.

*Interest*

The court finds that the additional amount of taxes which are due upon the assessed value determined by the court became due

on April 1, 1967, in regard to the 1966 assessment, and will become due on April 1, 1968 in regard to the 1967 assessment, and that the taxpayer should pay the statutory rate of 6% from those dates respectively in regard to each individual year's assessment to the date of the additional payments.

It is therefore adjudged that —

(1) The 1966 and 1967 final ad valorem real property assessments on the subject property as set by the assessor are grossly in excess of its fair market value and the illegal portion thereof should be set aside.

(2) The fair market value of the property as of January 1, 1966 and as of January 1, 1967 for ad valorem assessment purposes is $16,500.

(3) There is due and owing from the plaintiffs to the defendant tax collector the amount of taxes on this valuation, less the amount paid, plus interest at the rate of 6% on that balance from April 1, 1967, in regard to the 1966 tax assessment, and from April 1, 1968, in regard to the 1967 tax assessment, to the date of payment.

(4) The execution procedures provided for by the statutes of this state are stayed for a period of thirty days during which the taxpayer may make payments required by this judgment.

(5) As the taxpayers have received some of the relief which they requested, it is the determination of the court that each of the parties to this litigation should sustain their own costs and therefore costs are not assessed against any party.